**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
LAWRENCE BELFON,

                Plaintiff,          **MEMORANDUM OF DECISION & ORDER**

       -against-                2:18-cv-00408 (ADS)(SIL)

CREDIT CHECK TOTAL
CONSUMERINFO.COM, INC.,

                Defendant.
---------------------------------------------------------X

**APPEARANCES:**

**Edward B. Geller, Esq.**
*Counsel for the Plaintiff*
15 Landing Way
Bronx, NY 10464

**Jones Day**
*Counsel for the Defendant*
250 Vesey Street
New York, NY 10281
     By:    Edward S. Chang, Esq.,
             Kerianne Tobitsch, Esq., Of Counsel

**SPATT, District Judge**:

On January 19, 2018, Lawrence Belfon ("Belfon" or the "Plaintiff") commenced this action against Credit Check Total ConsumerInfo.com, Inc. (the "Defendant") in response to a purportedly inaccurate credit monitoring report. The Plaintiff alleges numerous New York State law causes of action, namely breach of contract, negligence, intentional infliction of emotional distress, and a violation of New York General Business Law § 349 ("GBL § 349"). Belfon seeks compensatory damages, punitive damages, attorneys' fees and costs.

1

Presently before the Court is a motion by the Defendant, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(6), seeking to dismiss the complaint for failure to state a claim upon which relief may be granted.

For the following reasons, the Defendant's motion to dismiss is granted.

## I. BACKGROUND

Unless otherwise noted, the following facts are drawn from the Plaintiff's complaint, and for the purposes of the instant motion, are construed in favor of the Plaintiff.

On or before July 3, 2017, the Plaintiff, a resident of Valley Stream, New York, purchased the Defendant's credit monitoring services through a website owned by the Defendant. Complaint ("Compl."), Docket Entry ("Dkt.") 1, ¶ 1-6. To purchase this service, the Defendant paid a $1.00 initial fee and agreed to pay $29.95 per month, beginning July 13, 2017. The Plaintiff also agreed to the "Terms of Use" for users of the Defendant's credit monitoring service. *Id*. ¶ 5. The Plaintiff made the $1.00 initial payment with a credit card. *Id*. ¶ 10.

On July 3, 2017, the Plaintiff received a credit monitoring statement from the Defendant that provided a report from all three major credit bureaus, Experian, Equifax, and TransUnion (the "Report"). The Report allegedly stated that TransUnion reported an account with Time Warner Cable listed as the original creditor and a phone number for a collection agency, which was collecting on the account. Equifax ostensibly reported that the same account was with the collection agency and did not display the original creditor. The Plaintiff contends that the TransUnion portion of the Report is confusing because the Plaintiff might assume that the original creditor is reporting the account, rather than the collection agency. *Id*. ¶ 6-9.

On these facts, Belfon contends that by providing inaccurate information in its credit monitoring service, the Defendant breached its contract with the Plaintiff. He alleges causes of

actions for breach of contract, intentional infliction of emotional distress, negligence, and deceptive acts or practices in violation of GBL § 349.

The Court notes that the Plaintiff filed his opposition brief with the Court 17 days after the deadline specified by Local Civil Rule 7.1(b). In the Defendant's Notice of Plaintiff's Non-Opposition, the Defendant states that the Plaintiff received consent for a one-week extension of the deadline to file his opposition brief. Dkt. 7 at 1. The Court has received no such request for an extension of time. The Defendant also notes that the Plaintiff emailed an unfiled version of their brief six days after the deadline, *id*. at 1-2, but that no such copy was filed with the Court until another 11 days. Belfon contends that the late filing was due to an inadvertent clerical error. Dkt. 11 at 1.

Although the Plaintiff's counsel failed to comply with the requisite procedural rules, there is no indication that these failures were anything but inadvertent mistakes nor is there any allegation of prejudice on the part of the Defendant. In light of that, the Court will consider the Plaintiff's untimely opposition brief.

## II. DISCUSSION

### A. STANDARD OF REVIEW: FED. R. CIV. P. 12(B)(6)

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See, e.g.*, *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free Sch. Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the *Twombly* standard, the Court may only dismiss a complaint if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The Second Circuit has expounded that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009)).

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to survive a motion to dismiss. FED. R. CIV. P. 8(a)(2). Under Rule 8, a complaint is not required to allege "detailed factual allegations." *Kendall v. Caliber Home Loans, Inc.*, 198 F. Supp. 3d 168, 170 (E.D.N.Y. 2016) (quoting *Twombly*, 550 U.S. at 555). "In ruling on a motion pursuant to FED. R. CIV. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)). The Court "[is] not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

**B. CONSIDERATION OF MATERIALS OUTSIDE THE COMPLAINT**

The Defendant attached three exhibits to its motion to dismiss: (1) the complaint; (2) the Terms of Use Agreement as it appeared on July 2, 2017; and (3) the Terms of Use Agreement as

it appeared on July 28, 2017. As a preliminary matter, the Court must first address whether the Terms of Use may be properly considered by the Court for the purposes of adjudicating this motion.

"[F]ederal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion." *Giugliano v. F3² Capital Partners, LLC,* No. 14-cv-7240, 2015 WL 5124796 (E.D.N.Y. Sept. 1, 2015) (Spatt, J.) (internal citation and quotation marks omitted); *Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011) (noting that the Second Circuit has recognized "exceptions to Rule 12(b)(6)'s general prohibition against considering materials outside the four corners of the complaint"). In adjudicating this motion, the Court is permitted to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in [the] defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Envtl. Servs. v. Recycle Green Servs.*, 7 F. Supp. 3d 260, 270 (E.D.N.Y. 2014) (Spatt, J.) (quoting *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003)), *aff'd in part and vacated in part on other grounds sub nom. Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir. 2005), *vacated on other grounds*, 547 U.S. 71, 126 S. Ct. 1503, 164 L. Ed. 2d 179 (2006)); *accord Healthnow New York, Inc. v. Catholic Health Sys., Inc.*, No. 14-cv-986S, 2015 WL 5673123 (W.D.N.Y. Sept. 25, 2015); *Oberstein v. SunPower Corp.*, No. 07-cv-1155, 2010 WL 1705868, at *3 (E.D.N.Y. Apr. 28, 2010).

The Court finds that both copies of the Terms of Use are integral to the complaint. *See, e.g.*, *Wilson v. Kellogg Co.*, 111 F. Supp. 3d 306, 311 (E.D.N.Y. 2015) (noting that terms and conditions posted on the defendant's website were integral to the complaint). The Plaintiff refers to a "contract" or "agreement" several times throughout the complaint. *See, e.g.*, Compl. ¶¶ 5 ("Plaintiff entered into a contract with the Defendant by paying an initial $1.00 fee to initiate their services to monitor his credit."), 11 ("Plaintiff thereby performed according to the valid 'contract' between Plaintiff and Defendant."), 15 ("By accepting that payment, Defendant executed the Agreement but failed to uphold the Agreement."). While these allegations do not mention the Terms of Use by name, the Plaintiff is undoubtedly referring to it in the formation of its claim. The complaint indicates that the Plaintiff "'relie[d] heavily upon [the Terms of Use's] terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco*, 622 F.3d at 111 (internal citations omitted).

The Court also may take judicial notice of these documents in order to consider them in adjudicating this motion. It is entirely proper for the Court to take judicial notice of publically available documents on published websites. *See Doe v. Nat'l Conference of Bar Examiners*, No. 1:16-cv-264 (PKC), 2017 WL 74715, at *9 n.17 (E.D.N.Y. Jan. 6, 2017) (taking judicial notice of a portion of the defendant's website); *Quick Cash of Westchester Ave. LLC v. Vill. of Port Chester*, No. 11-cv-5608, 2013 WL 135216, at *4 (S.D.N.Y. Jan. 10, 2013) ("[I]t is well established that courts may take judicial notice of publicly available documents on a motion to dismiss." (citing *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004))). The existence of these documents as well as their contents "can accurately and readily [be] determined" as the source at issue's "accuracy cannot reasonably be questioned."

FED. R. EVID. 201(b)(2). As such, the Court takes judicial notice of the fact of publication of these documents as well as the contents of these documents.

Accordingly, the Court will consider the Terms of Use for purposes of adjudicating the instant motion.

## C. THE FAIR CREDIT REPORTING ACT

The Defendant alleges that the Plaintiff's claims could only arise out of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and that Belfon has failed to plead such a claim.

The FCRA ensures "that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). While it primarily regulates credit reporting agencies, such as Experian, Equifax and TransUnion, the FCRA also protects consumers from "person[s]" who obtain consumer reports for an impermissible purpose. 15 U.S.C. § 1681b(f); *Kinel v. Sherman Acquisition II LP*, No. 05 Civ. 3456 (RCC)(THK), 2006 WL 5157678, at *13 (S.D.N.Y. Feb. 28, 2006); *Redhead v. Winston & Winston, P.C.*, No. 01–CV–11475, 2002 WL 31106934, at *3–5 (S.D.N.Y. Sept. 20, 2002) ("The FCRA places distinct obligations on three types of entities: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies." (citing 15 U.S.C. § 1681 *et seq.*; *Aklagi v. Nationscredit Fin. Servs. Corp.*, 196 F. Supp. 2d 1186, 1192 (D. Kan. 2002); *Thomasson v. Bank One, La., N.A.*, 137 F. Supp. 2d 721, 722 (E.D. La. 2001))). Furnishers of credit information also have a duty to correct inaccuracies when notified by a consumer reporting agency, and must always provide accurate information. 15 U.S.C. § 1681s-2. Criminal

7

liability is established for "knowingly and willfully obtain[ing] information ... under false pretenses," 15 U.S.C. § 1681q, while civil liability is imposed for both willful and negligent noncompliance. 15 U.S.C. § 1681n-1681o.

The Plaintiff has not alleged a cause of action under the FCRA. He has thus not specified whether the Defendant falls into any of the three categories that are covered under the statute. However, the Defendant contends that the FCRA preempts Belfon's state law claims. The Court disagrees.

There are two provisions of the FCRA that explicitly preempt state law claims: Section 1681t(b) and Section 1681h(e). The former preempts state law regarding "any subject matter regulated" under numerous provisions in the FCRA. The latter states that:

> no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e). As the Defendant states in his motion to dismiss, the Defendant is not subject to the FCRA. Dkt. 6-1 at 5 ("CIC itself is not a CRA subject to the FCRA, nor is CIC responsible for the reporting of the national credit bureaus … that are subject to the FCRA. … Even if the FCRA were to apply to CIC for credit reporting purposes (which it does not), Plaintiff has not pleaded a claim under the FCRA."). Both preemption provisions only apply to those organizations that are subject to the FCRA, as furnishers, CRAs or users. While the Defendant contends that it does not fit under any FCRA-regulated organization, it cannot look to the FCRA for protection against state law causes of action.

The cases that the Defendant cites are inapposite to the instant case, as all of the organizations-at-issue are subject to the FCRA. *See Munroe v. Nationstar Mort. LLC*, 207 F. Supp. 3d 232, 240 (E.D.N.Y. 2016) (finding preemption of GBL § 349 claims based on § 1681t(b)(1)(F) because "these allegations 'concern' Nationstar's responsibilities as a furnisher"); *Macpherson v. JP Morgan Chase Bank, N.A.*, 665 F.3d 45, 47-48 (2d Cir. 2011) (finding preemption of Connecticut state law claims based on § 1681t(b)(1)(F) regarding a furnisher of credit information); *Okocha v. HSBC Bank USA, N.A.*, 700 F. Supp. 2d 369, 375-77 (S.D.N.Y. 2010) ("All of these allegations appear to fall squarely within the subject matter of Section 1681–2 (duties of Furnishers) and therefore are preempted by Section 1681t(b)(1)(F).").

Consequently, the Court finds that the FCRA does not preempt the Plaintiff's state law claims.

**D. BREACH OF CONTRACT CLAIM**

The Plaintiff contends that the Defendant breached a contract with him for "accept[ing] … payment … but fail[ing] to uphold the Agreement" by "assuring the Plaintiff's credit report information is true and accurate." Compl. ¶ 15. Under New York law, there are four elements in a breach of contract claim: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996); *accord Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011); *Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*, 83 A.D.3d 804, 806, 921 N.Y.S.2d 260, 264 (2d Dept. 2011).

The Defendant contends that the Plaintiff's breach of contract claim is insufficient because it fails to specify the relevant contractual provisions. Under New York law, in order to plead breach of contract, a plaintiff must identify the specific contractual provision or provisions that

9

were allegedly breached. *M&T Bank Corp. v. LaSalle Bank Nat. Ass'n*, 852 F. Supp. 2d 324, 334 (W.D.N.Y. 2012) (collecting cases); *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 494 (S.D.N.Y. 2002) *aff'd*, 65 F. App'x 736 (2d Cir. 2003); *Levy v. Bessemer Trust Co., N.A.*, No. 97 Civ. 1785, 1997 WL 431079, at *5 (S.D.N.Y. July 30, 1997). *See, e.g.*, *Childers v. New York and Presbyterian Hosp.*, 36 F. Supp. 3d 292, 312–13 (S.D.N.Y.2014) (dismissing breach of contract claim because the complaint only alleged, in a conclusory fashion, that there was "an express contractual relationship between the parties," and did not provide any further details regarding the alleged agreement). "Under New York law, 'before the power of law can be invoked to enforce a promise, it must be sufficiently certain and specific so that what was promised can be ascertained.'" *Sang Lan v. Time Warner, Inc.*, No. 11 Civ. 2870 (AT), 2014 WL 764250, at *2 (S.D.N.Y. Feb. 25, 2014) (quoting *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 109, 436 N.Y.S.2d 247, 417 N.E.2d 541 (1981)).

"Although pleading requirements are construed liberally under Rule 12(b)(6), failure to provide sufficient grounds for relief warrants dismissal of a plaintiff's claims." *Wolff*, 210 F. Supp. 2d at 494 (citing *Levisohn, Lerner, Berger & Langsam v. Med. Taping Sys., Inc.*, 10 F. Supp. 2d 334, 344 (S.D.N.Y. 1998)).

In the complaint, the Plaintiff merely asserts that the Defendant failed to honor their contract by presenting untruthful and inaccurate credit information in its credit monitoring solution. *See* Compl. ¶ 15. However, Belfon does not identify what specific contract he is referring to nor any material terms of the agreement that addresses truthful and accurate credit information. The Plaintiff does not indicate where his assertion that the Defendant is required to assure the Plaintiff's credit information is truthful and accurate is promised. The failure to identify the contract-at-issue precludes the Court from determining whether the parties entered into a contract

10

in the first place. *See Stadt v. Fox News Network LLC*, 719 F. Supp. 2d 312, 318 (S.D.N.Y. 2010) ("The [plaintiff] must allege the specific provisions of the contract upon which the breach of contract is based. A claim for breach of contract cannot be sustained simply by a conclusory statement that the accused breached a contract.").

Belfon attempts to address this issue by attaching a portion (14 of 26 pages) of the most recent version of the Terms of Use, as revised on January 25, 2018. *See* Dkt. 8, 9. As this document was amended after the period of the alleged breach, the parties could not have possibly agreed to the terms of this document, as presented to the Court. However, the Defendant attaches a version of the Terms of Use that was current at the time of the Plaintiff's allegations. *See* Dkt. 6-5. Even if this is the contract relevant to the Plaintiff's complaint, the failure to identify a single contractual provision is fatal to Belfon's claim. Without pinpointing the relevant provision with the requisite specificity, it is impossible assess the parties' rights and obligations under a potential contract and determine whether the Defendant's alleged actions breached any promises. *See Wolff*, 210 F. Supp. 2d at 494 ("[A] plaintiff must identify the specific provision of the contract that was breached as a result of the acts at issue" (internal citations omitted)). The Court dismisses the Plaintiff's breach of contract claim for failure to identify the particular provisions in the agreement relevant to the Defendant's alleged actions.

Even if the Plaintiff identified such a provision, Belfon's breach of contract claim is precluded by any of the three versions of the Terms of Use before the Court. *See* Dkt. 6-5, 6-6, 8, 9. All three versions of the Terms of Use say the following, in pertinent part:

> The credit report you are requesting from [the Defendant] is not intended to constitute the disclosure of Experian Credit Bureau information required by the FCRA or similar state laws. Experian Credit Bureau's National Consumer Assistance Center provides a proprietary consumer disclosure that is different from the consumer credit report provided by [the Defendant]. … Although

11

> comprehensive, the credit reports from each of the three national credit reporting companies that are available from [the Defendant] may not have the same information as a credit report obtained directly from the three national credit reporting companies or through the central source. …
>
> If you believe that your credit report contains inaccurate, non-fraudulent information, it is your responsibility to contact the relevant credit reporting company, and follow the appropriate procedures for notifying the credit reporting company that you believe that your credit report contains an inaccuracy.

Dkts. 6-5 at 7, 10; 6-6 at 7, 10; 8 at 7, 11. The Defendant's two versions also state, in pertinent part: "[The Defendant] is not responsible for the accuracy or contents of your credit file, including but not limited to information delivered in the credit report and/or score products." Dkts. 6-5 at 15; 6-6 at 15. However, because the Plaintiff's version of the Terms of Use inexplicably only includes the first 14 of 26 pages, the potentially relevant page is missing.

Further, an examination of the remainder of the Terms of Use do not yield any additional provisions helpful to the Plaintiff's claims regarding the accuracy of a credit report provided by the Defendant's credit monitoring statement. *See* Dkts. 6-5; 6-6; 8. According to the relevant agreements, the Defendant had no contractual obligation to ensure that the credit reporting, which was not obtained directly from the credit reporting companies, was accurate   There is no provision that was alleged in the complaint or present in the Terms of Use that corroborate any potential non-performance of the Defendant based on its alleged actions. Accordingly, accepting as true all factual allegations and liberally construing all reasonable inferences in the complaint in the light most favorable to the Plaintiff, the Plaintiff has not alleged a breach of contract claim.

The Plaintiff also failed to plead any factual allegations regarding damages arising from the purported breach of contract. "[A]n allegation that [a party] 'suffered damages' without particular facts as to how she was damaged does not satisfy *Twombly* and *Iqbal*." *Int'l Bus. Machs. Corp. v. Dale*, No. 7:11-cv-951 (VB), 2011 WL 4012399, at *2 (S.D.N.Y. Sept. 9, 2011). Belfon

does not contend what his damages are or which damages result from the purported contractual breach. The conclusory declaration that he suffered "damages … arising from the Defendant's breach of contract," is plainly insufficient. The Plaintiff's claim must rely on more than a conclusory allegation that the Defendant's non-performance caused damages. *Id*. There is no indication in the complaint as to how the Defendant's alleged breach resulted in damages. As such, Belfon's breach of contract claim must be dismissed.

The Plaintiff attempts to save his claim by introducing, for the first time in his opposition papers, a new allegation that Credit Karma, a non-party to this action, provided different information concerning the Plaintiff's Time Warner account than the Defendant. Belfon contends, "[the] Defendant should be held to the same level of accuracy as Credit Karma and other credit monitoring services." Dkt. 8 at 3. This is a clear, transparent effort by the Plaintiff to supplement his complaint using his opposition papers. A plaintiff is not permitted to add additional factual allegations or legal theories in opposing a motion to dismiss. *Uddoh v. United Healthcare*, 254 F. Supp. 3d 424, 429 (E.D.N.Y. 2017) (collecting cases); *Nieves v. Fahmy*, No. 15 Civ. 7297 (AMD) (ST), 2016 WL 6804926, at *7 (E.D.N.Y. Nov. 16, 2016) (same); *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 205 (S.D.N.Y. 2014) ("the Court does not consider [the new allegations in the plaintiff's memorandum] to be part of the Complaint"). If the Plaintiff wishes to add additional facts or theories for the Court to consider, the Plaintiff should have filed a motion to amend his complaint. The Court will not take these facts into consideration for the purposes of adjudicating this motion.

### E. REMAINING STATE LAW CLAIMS

The Defendant argues that the Plaintiff's claims for negligence, intentional infliction of emotional distress, and violations of GBL § 349 must be dismissed because Belfon's failure to

oppose its arguments regarding these claims constitutes abandonment. The Plaintiff did not respond, in any way, to the Defendant's arguments concerning these three state-law claims. District courts in this circuit have found that "[a] plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute an abandonment of those claims." *Youmans v. Schiro*, No. 12 Civ. 3690, 2013 WL 6284422, at *5 (S.D.N.Y. Dec. 3, 2013). *See Robinson v. Fischer*, No. 09 CIV. 8882 (LAK)(AJP), 2010 WL 5376204, at *10 (S.D.N.Y. Dec. 29, 2010) ("Federal courts have the discretion to deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in their opposition papers defendants' arguments for dismissing such a claim." (citing *Lipton v. Cty. of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed."))); s*ee also Lomonoco v. Saint Anne Inst.*, No. 1:15-CV-1163, 2018 WL 2324051, at *12 (N.D.N.Y. May 22, 2018) ("[T]he Court may, and does, construe the failure to respond to an opposing party's arguments as an effective abandonment of the claim."); *Javed v. Medgar Evers Coll. of the City Univ. of New York*, No. 15-CV-7424, 2017 WL 4357138, at *4–5 (E.D.N.Y. Sept. 29, 2017) (dismissing a series of claims for failure to respond to defendants' arguments), *aff'd sub nom. Javed v. Medgar Evers Coll. of City Univ. of New York*, 724 F. App'x 73 (2d Cir. 2018), *as amended* (June 12, 2018); *Hou v. Lam*, No. 3:16-CV-01592 (VAB), 2017 WL 4316394, at *3 (D. Conn. Sept. 27, 2017) (dismissing Connecticut state law claim due to the plaintiff's failure to respond to the defendants' arguments); *Bonilla v. Smithfield Assocs. LLC*, No. 09 Civ. 1549, 2009 WL 4457304, at *4 (S.D.N.Y. Dec. 4, 2009) (dismissing certain claims where the plaintiff failed to respond to the defendant's arguments); *Thomas v. Atl. Express Corp.*, No. 07 Civ.1978, 2009 WL 856993, at *2 (S.D.N.Y. Mar. 31, 2009) (same) (citing *Hanig v. Yorktown Cent. Sch. Dist.*, 384 F. Supp. 2d 710,

722–23 (S.D.N.Y. 2005)); *Burchette v. Abercrombie & Fitch Stores, Inc.*, No. 08 Civ. 8786, 2009 WL 856682, at *9 (S.D.N.Y. Mar. 30, 2009) (dismissing plaintiff's constructive discharge claim because plaintiff abandoned it by failing to address it in her opposition motion to defendant's motion to dismiss all claims); *Hanig*, 384 F. Supp. 2d at 723 ("[B]ecause plaintiff did not address defendant's motion to dismiss with regard to this claim, it is deemed abandoned and is hereby dismissed."); *Martinez v. Sanders*, No. 02 Civ. 5624, 2004 WL 1234041, at *3 (S.D.N.Y. June 3, 2004) ("Because Plaintiff did not address Defendant's motion to dismiss with regard to these claims, they are deemed abandoned."); *Anti–Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 907 n. 11 (S.D.N.Y. 1997) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue ... which provides an independent basis for dismissal."), *aff'd*, 130 F.3d 1101 (2d Cir. 1997). Therefore, those claims are deemed abandoned.

Accordingly, the portion of the Defendant's motion to dismiss pertaining to claims of negligence, intentional infliction of emotional distress, and violations of GBL § 349 is granted.

### F. Leave to Amend

The Plaintiff has not requested leave to amend his complaint should any of his causes of action be dismissed. Nevertheless, the Court will consider if such relief is appropriate.

Fed. R. Civ. P. 15(a)(2) applies to amending the pleadings once the time to do so as a matter of right has expired. It states, in pertinent part, that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts have construed this rule liberally and have said that "the purpose of Rule 15 is to allow a party to correct an error that might otherwise prevent the court from hearing the merits of the claim." *Safety–Kleen Sys., Inc. v. Silogram Lubricants Corp.*, No. 12-CV-4849, 2013 WL 6795963, at *2 (E.D.N.Y. Dec. 23, 2013) (quoting *Chapman*

*v. YMCA of Greater Buffalo*, 161 F.R.D. 21, 24 (W.D.N.Y. 1995)); *see also Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (finding a "strong preference for resolving disputes on the merits" (quoting *N.Y. v. Green*, 420 F.3d 99, 104 (2d Cir. 2005))).

"The Rule reflects two of the most important principles behind the Federal Rules: pleadings are to serve the limited role of providing the opposing party with notice of the claim or defense to be litigated ... and 'mere technicalities' should not prevent cases from being decided on the merits." *D.C.R. Trucking & Excavation, Inc. v. Aetna Cas. and Sur. Co.*, No. 96-cv-3995, 2002 WL 32096594, at *8 (E.D.N.Y. Oct. 31, 2002) (quoting *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 283 (2d Cir. 2000)).

In the Second Circuit, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). A court should deny leave to amend only "in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)).

In the instant matter, the Court does not find good cause to allow the Plaintiff to replead his causes of action. While this Court and the Second Circuit generally indulges a plaintiff's request to replead following a motion to dismiss; in the Plaintiff's case, it would be a futile endeavor. *See Foman*, 371 U.S. at 182; *Oneida Indian Nation of New York v. City of Sherrill*, 337 F.3d 139, 168 (2d Cir. 2003) (internal citations omitted), *reversed on other grounds by City of Sherrill v. Oneida Indian Nation of New York*, 544 U.S. 197, 125 S. Ct. 1478, 161 L. Ed. 2d 386

(2005); *In Re American Express Co.*, 39 F.3d 395, 402 (2d Cir. 1994); *John Hancock Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994); *Ruffolo v. Oppenheimer & Co., Inc.*, 987 F.2d 129, 131 (2d Cir. 1993). "A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Oneida Indian Nation of New York*, 337 F.3d at 126 (citing *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).

It is manifestly clear that the Plaintiff is unable to sufficiently allege a breach of contract in connection with the accuracy of the information provided to him by the Defendant. Belfon has not detailed any supporting facts in support of its breach of contract claim that are not merely conclusory. Moreover, all copies of the Terms of Use that were submitted to this Court foreclose the Plaintiff's bare-bone accusations regarding a purported contractual breach. The facts plead in the complaint do not support this claim under any circumstances.

Allowing Belfon to revise the remainder of his state law claims would also be inappropriate. The Plaintiff's abandonment of his claims of negligence, intentional infliction of emotional distress, and violations of GBL § 349 forecloses his ability to revise them. *See, e.g.*, *Rothberg v. Phil's Main Roofing, LLC*, No. 14-CV-10195 (NSR), 2017 WL 1162904, at *9 (S.D.N.Y. Mar. 24, 2017), *reconsideration denied*, No. 14-CV-10195 (NSR), 2017 WL 1857257 (S.D.N.Y. May 5, 2017).

### III. CONCLUSION

For the reasons stated above, the Defendant's motion to dismiss the Plaintiff's complaint pursuant to Rule 12(b)(6), is granted.

The Clerk of the Court is respectfully directed to close the case.

It is **SO ORDERED**:

Dated: Central Islip, New York

October 1, 2018

                                                  */s/ Arthur D. Spatt*

                                                  ARTHUR D. SPATT

                                                  United States District Judge